THE McGANN COMPANY, A CORPORATION, RESPONDENT, v. NEW JERSEY NOVELTY FOOTWEAR COMPANY. DEFENDANT, AND LA BRECQUE COMPANY, INCORPORATED, A CORPORATION, APPELLANT.

Argued June 27, 1921—Decided November 14, 1921.

1. The lien of a warehouseman for storage charges on goods delivered to it for storage is paramount but not adverse to the rights of holders of warehouse receipts.

2. If an adverse claimant gets possession of chattels stored in a warehouse, the warehouseman would be entitled to obtain possession of them again, by a proper possessory action, to enable it to make good its obligation on its negotiable receipts; such action would be in furtherance of the bailment, and section 25 of the act concerning warehouse receipts (*Comp. Stat., p.* 5781) forbidding proceedings against such goods, while in its possession, applies only to actions adverse to the bailment.

3. In a replevin suit brought by one warehouseman to recover possession of goods from another warehouseman that had obtained possession of the goods, evidence that the party storing the goods with the plaintiff had paid the bill for storage without objection, was admissible to show that the lien was at an end and that the amount claimed by the plaintiff was not excessive.

4. A warehouseman brought suit for conversion of certain goods against another warehouseman, whose lien for storage had been paid and negotiable receipts returned to it, so that they had no further interest in the goods. and it was their duty to return the goods to their bailor, and they could not recognize another person as having a paramount title over their immediate bailor.

---

On appeal from the Essex County Circuit Court.

For the respondent, *Milton M. Unger.*

For the appellant, *Burnett, Sorg. Murray & Duncan.*

The opinion of the court was delivered by

SWAYZE, J.    The McGann Company was a warehouseman in Newark, doing business in a rented property.    It had stored chattels of the New Jersey Novelty Footwear Company for which it had issued negotiable warehouse receipts.    The La Brecque Company acquired title to the real estate, took proceedings to dispossess the McGann Company, and after litigation succeeded.    When ouster was imminent, the La Brecque Company substituted its negotiable receipts for those of the McGann Company, with the consent of the Novelty company and the others interested. took up from the holders and delivered to the McGann Company the negotiable receipts of that company.    The chattels remained in the actual possession of the La Brecque Company in the warehouse.    The charges of the McGann Company for storage remained unpaid.    The La Brecque Company admits that it had agreed to pay them but refused to do so because the amount demanded was excessive.    The situation then was this:    The La Brecque Company had the actual possession of the goods, subject to the rights of the holders of the La Brecque Company's negotiable warehouse receipts, and the lien of the McGann Company for storage.    In this situation the McGann Company replevied.    The La Brecque Company did not rebond and judgment went in favor of the McGann Company for possession of the goods.    In the pleadings the La Brecque Company filed a counter-claim, claiming damages for the conversion of the chattels covered by the warehouse receipts.    The basis of the claim was that the McGann Company, at the request of the Novelty company, delivered the chattels to the Kalter company.    The purchase price put the Novelty company in funds to pay the storage charges and satisfy the McGann Company.    The negotiable receipts of the La Brecque Company were still outstanding.    By order of the court the replevin suit and the counter-claim were tried before separate

juries as distinct actions. A verdict for damages for the conversion was rendered in favor of the La Brecque Company and judgment was entered on the counter-claim for the amount. Both parties appealed.

1. We deal first with the appeal of the McGann Company in the replevin suit. The most important argument urged upon us is that replevin would not lie against a warehouseman because section 25 of the statute (*Comp. Stat., p.* 5781) enacts that the warehouseman shall in no case be compelled to deliver up the actual possession of the goods until the receipt is surrendered to him or impounded by the court. The objection to the applicability of this provision in the present case is that each of two warehousemen were in fact entitled to an interest in the chattels, one by way of title as warehouseman, the other by way of a lien. The McGann Company had not voluntarily surrendered or waived the lien. The object of the statute is to preserve the rights of the holders of warehouse receipts so that the negotiable documents of title may represent the goods and may be safely dealt with on that assumption (note to the Uniform Warehouse Receipts act, 30 *Amer. Bar Assn.* 402). These rights are preserved by forbidding the intrusion of rights adverse or paramount to the rights of the holders of receipts. But the act expressly provides for a lien in favor of certain warehousemen's charges of a character necessary for the protection of the chattels for the benefit of all concerned. This lien is paramount but not adverse to the rights of the holders of the receipts. It is auxiliary thereto and a part of the contract of bailment, made so by the statutory provisions for enforcement. We see no reason why the first warehouseman, McGann, may not as such protect his possession as warehouseman. If an adverse claimant should get possession of the chattels in the warehouse, the warehouseman would be entitled to obtain possession again and hold it to enable him to make good his obligation on his negotiable receipts. For that purpose he would be entitled to a proper possessory action. Such action would be in furtherance of the bailment and the very object of the statute. to preserve the rights of holders of

warehousemen's receipts. The act (section 25) applies only to actions adverse to the bailment. Securing the discharge of the bailment from the lien of the McGann Company was for the benefit of the holders of warehouse receipts. It was therefore not erroneous to submit the question to the jury. This secures the lien as the statute provides, but the right secured is only the possession for the special purpose of enforcing the lien. The McGann Company held the chattels themselves as bailees for the purpose of the statute and when the lien ceased the right to possession ceased. Since the action was only a possessory action intended to pass the actual possession to the warehouseman who had the lien and the right to possession for the special purpose, it was necessary to ascertain the amount of the lien which the Novelty company, not the La Brecque Company, was bound to pay. That would be properly ascertained when the McGann Company was restored to actual as well as rightful possession. Failure to render an itemized statement to the La Brecque Company was no waiver of lien, for the La Brecque Company was under no obligation to pay. It was proper to prove that the Novelty company paid the bill for storage without objection, for that was convincing evidence that the lien was at an end and that the amount claimed by the McGann Company was not excessive.

The other objections to evidence are not argued. The motion to nonsuit and direct a verdict are rested upon the statement as to preponderance of evidence which are outside our province and for the jury.

The grounds of appeal in the replevin suit are not well taken and the judgment is affirmed, with costs.

2. In the suit for conversion the positions of the parties are reversed and the La Brecque Company is substantially plaintiff. The situation was this: The McGann Company had possession of the goods. Their lien had been paid and their receipts returned to them; they had no further interest in the chattels. Their duty was the same as the duty of any bailee, to return the goods to their bailor. the La Brecque Company. By delivering the chattels to the Novelty company, they in fact recognized the Novelty company as having

a paramount title over their own immediate bailor, who became such by the delivery under the writ of replevin. Having recognized the Novelty company as holder of a paramount title the burden was on the McGann Company to prove the fact. Cases are collected in *C. J.* 1109, § 39. This they could not do. The paramount title was in fact in the La Brecque Company as warehousemen for the holders of the La Brecque receipts.

This is not the view taken by the trial judge. He charged that if the McGann Company had information when the goods were sold to Kalter that the La Brecque Company and not the Novelty company was the person lawfully entitled to the goods the La Brecque Company would be entitled to recover, and he put on the La Brecque Company the burden of proving information in the McGann Company; but this was too much. The La Brecque Company's title as warehousemen was not dependent on the McGann Company knowledge since the McGann Company itself had taken the chattels out of the La Brecque Company's possession for a temporary purpose only. It could not enlarge the Novelty company's equity by recognizing a larger title in that company in ignorance of the title of the La Brecque Company. The charge was unfavorable to the La Brecque Company, but it required the jury to find that the La Brecque Company had a right to the possession. That suffices in connection with the verdict which was found on sufficient evidence that the McGann Company had information of the La Brecque Company title.

The McGann Company now seeks to exculpate itself by appealing to section 8 of the Warehousemen's act. The McGann Company was, however, no longer warehouseman as to those chattels, as before. On the payment of the lien for storage all interest of the McGann Company was at an end. The only one who could be held to the obligations of a warehouseman was the La Brecque Company, and since it alone could be held to the obligations of a warehouseman, it only could have the protection of the statute.

All the arguments addressed to section 8 of the statute are irrelevant in this case. Section 8 applies only to warehouse-

men and depositors. The McGann Company ceased to be warehouseman when its receipts were returned and its lien for storage satisfied, and the Novelty company did not offer, and could not offer, to surrender the negotiable receipts which it had consented to the La Brecque Company issuing. It makes no difference to whom the goods really belonged at the time of the sale to the Kalter company, unless they belonged absolutely to the Novelty company, and that is not suggested. It is suggested that the sale to the Kalter company was ratified by the Novelty company. The Novelty company could not ratify since the immediate right was in the La Brecque Company, and it was entitled to immediate possession from its bailee, who had formerly been warehouseman. The beneficial interest was in the holders of the warehouse receipts. The McGann Company seems to think that its possession for a special purpose, avails for all purposes, instead of only for the purpose for which the possession is legally held.

It is argued that the jury might have found that the La Brecque Company consented that the proceeds of the sale to the Kalter company should stand in the place of the goods and thereby ratified the sale. There is no evidence that the La Brecque Company consented to the sale. Mere consent that the proceeds of sale as an accomplished fact might be held by trustees pending the outcome of this litigation, is no consent to the sale. On the contrary, the La Brecque Company was continuously insisting that the sale was a conversion. It was, however, apparently willing that the McGann Company should protect itself against its liability for the conversion. Similar considerations justify the refusal to admit the record in the bankruptcy case against the Novelty company. The present suit was against the McGann Company not the Novelty company. The judgment for damages for the conversion must be affirmed, with costs.

Our labors have been much increased by the filing of forty-five grounds of appeal on the part of the McGann Company. Counsel seem unwilling to make a careful analysis but turns on the court reasons, good, bad and indifferent in the hope

that the court may find some error. This is a bad practice growing of late and deserving of criticism. The Chancellor has dealt with it this term in *Trenton Banking Co.* v. *Rittenhouse, ante p.* 450, in an opinion well deserving of the attention of the bar.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 14.